# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-CV-61645-SINGHAL/STRAUSS

**GARY BRECKA,**

     Plaintiff,

v.

**THE INDIVIDUALS, ENTITIES,**
and **UNINCORPORATED ASSOCIATIONS**
**d/b/a GOT HYDRO WATER BOTTLE**

     Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court following an evidentiary hearing on Plaintiff's alleged damages sought in Plaintiff's Motion for Default Judgment [DE 15] held on February 28, 2025. [DE 22]. The Hon. Raag Singhal referred this matter to me, pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, for issuance of a report and recommendation. [DE 20]. After conducting an evidentiary hearing and reviewing the submitted evidence, I find that Plaintiff has established that he is entitled to an award of $16,000,000 in damages for Defendants' actions. Additionally, Plaintiff's Motion for Contempt [DE 16] should be **DENIED as MOOT**

## BACKGROUND

On September 5, 2024, Plaintiff filed a Verified Complaint against Defendants asserting claims for: (1) unfair competition and false endorsement under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a); (2) violation of Florida statutory right of publicity, under section 540.08, Florida Statutes; (3) common law invasion of privacy; and (4) common law unfair competition. [DE 1].

Plaintiff then moved for a temporary restraining order ("TRO") and preliminary injunction. [DE 5].  The Court granted the TRO and set a hearing for the preliminary injunction on October 8, 2024.  [DE 9].  Plaintiff served Defendants with the Verified Complaint, TRO, and preliminary injunction motion.  [DE 10].  Defendants, however, failed to respond to any of the pleadings or motions and failed to appear at the preliminary injunction hearing.  Because Defendants failed to appear at the preliminary injunction hearing, and Plaintiff satisfied the requirements for the issuance of a preliminary injunction, the Court granted Plaintiff's motion.  [DE 18].[1]

On October 7, 2024, Plaintiff moved for entry of Clerk's Default, pursuant to Rule 55(a). [DE 11].  That same day, the Clerk entered default against Defendants.  [DE 12].  Plaintiff filed a Motion for Final Default Judgment on October 25, 2024, and a Motion for Contempt on November 18, 2024, based upon Defendants violating the TRO and preliminary injunction.  [DE 15]; [DE 16].  The Court granted Plaintiff's Motion for Final Default Judgment as to liability but denied it as to damages because Plaintiff's proffered calculations were not sufficient for the Court to make an appropriate determination.  *See* [DE 17] at 3.  The Court then instructed the parties to file a joint report advising the Court whether they intended to proceed with a bench trial or an evidentiary hearing as to the issues of damages only.  *Id.*

Plaintiff filed his report where he consented to Magistrate Judge jurisdiction "for any and all further proceedings in the case, including the evidentiary hearing."  [DE 19] at 2.[2]  Judge Singhal then referred the matter to me for disposition of all non-dispositive motions and report and

---

[1] Judge Singhal granted Plaintiff's request for a preliminary injunction orally at the hearing on October 8, 2024.  *See* [DE 25] at 7.

[2] At the time of Plaintiff's filing, Plaintiff's Motion for Contempt remained pending.  Thus, this Report and Recommendation addresses that motion as well.

recommendation on dispositive motions. [DE 20].[3]  I then held an evidentiary hearing on damages

on February 28, 2025, at which only Plaintiff and his counsel appeared.  Plaintiff presented

documentary evidence, testimony from Plaintiff, Gary Brecka, and argument from counsel.  Below

are the Court's findings of fact and conclusions of law.

## ANALYSIS

### I.    FINDINGS OF FACT[4]

#### *Plaintiff, Ultimate Human, and Product Endorsements*

Plaintiff is a human biologist, "biohacker," co-founder of the wellness company 10X

Health, and the owner, host, and publisher of The Ultimate Human podcast (the "Podcast") through

his entity Ultimate Human, LLC ("Ultimate Human").  [DE 1] ¶ 9.  He holds a BS in Biology from

Frostburg State University and a BS in Human Biology from the National University of Health

Sciences School of Chiropractic Medicine.  *Id*. ¶ 10.  Plaintiff has more than 20 years of bio-

hacking and functional medicine experience and is frequently invited to speak at major health and

wellness conferences across the country.  *Id*. ¶ 11.  His media platform, Ultimate Human, includes

a podcast and social media channels for longevity, anti-aging, and wellness.  [DE 23] at 25.

Plaintiff uses his platform to extoll the benefits of wellness products that he believes in,

including hydrogen water, and to partner with only a select group of producers whom he knows

meet a high standard of quality and efficacy so as to not negatively affect the health of, or his

---

[3] Though Plaintiff consented to Magistrate Judge jurisdiction, Defendants have not appeared and therefore have not.

[4] The facts in the Verified Complaint are admitted by virtue of Defendants' default.  *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) ("[D]efendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (quoting *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Additionally, Judge Singhal granted Plaintiff's Motion for Final Default Judgment on the issue of Defendants' liability.  *See* [DE 17].

credibility with, his loyal fanbase.  [DE 1] ¶14; [DE 23] at 27–28.  Before endorsing a particular product, however, Plaintiff insists that the products be something that he would use in his daily life, and products are subjected to rigorous testing before gaining his endorsement.  [DE 23] at 27–28.

Besides endorsing products, Plaintiff also regularly speaks on the topics of longevity, anti-aging, bio-optimization, and human physiology, and discusses different mechanisms for supplementation, hydration, exercise, and the impact that these have on human physiology.  *Id.* at 25–26.  For a one-hour appearance, Plaintiff regularly charges $100,000 for his time.  *Id*. Additionally, Plaintiff's Podcast regularly ranks as the number 1 or number 2 health and wellness podcast in the world and is broadcast across multiple social media channels, including TikTok, X, Facebook, and Instagram.  *Id.* at 26.  Plaintiff also uses his own personal social media accounts. *Id.*  Based on Plaintiff's expertise and recognition in the health and wellness industry, his name, image, and likeness—and any attendant endorsement, affiliation, or sponsorship—is commercially valuable and sought after by producers in, or those who are looking to target, the health and wellness space.  [DE 1] ¶ 15.

### ***Plaintiff and Echo Go+™***

Echo Hydrogen Water ("Echo") makes the Echo Go+™ (the "Echo Bottle"), a hydrogen water bottle product.  [DE 1] ¶ 20.  On January 2, 2024, Ultimate Human published episode 23 of the Podcast featuring Dr. Paul Barattiero, the founder of Echo.  *Id.* ¶ 23.  Episode 23 was titled "Best Water to Drink? | Impact of Hydrogen Water On Your Gut & Brain with Dr. Paul Barattiero," and featured a discussion between Dr. Barattiero and Plaintiff on potential benefits of drinking hydrogen water, including the potential benefits on brain function from using the Echo Bottle,

more specifically.  *Id.* ¶ 24.  Plaintiff and Ultimate Human conducted extensive independent testing of the Echo Bottle prior to giving his endorsement.  [DE 23] at 28.

The Echo Bottle retails for $275.00, and Plaintiff is entitled to a 40% revenue share after cost of goods sold.  *Id.* at 29.  Prior to Plaintiff's endorsement of the Echo Bottle, Echo's sales reached approximately $70,000 per month.  *Id.* at 30.  Almost immediately after Plaintiff's endorsement and inclusion of the Echo Bottle on the Ultimate Human platform, Echo's sales jumped to $4,500,000 a month, which Plaintiff attributes to his endorsement.  *Id.* at 30.  In 2024, Echo had $33,000,000 in sales.  *Id.* at 30–31.  The Echo Bottle is sold through Plaintiff's personal social media channels, and it is also sold on Amazon.  *Id.* at 31.  The Echo Bottle is not available in retail stores.  *Id.*  Plaintiff promotes the Echo Bottle through podcasts, reads, stage talks, interviews, lectures, and social media.  *Id.* at 31, 33.

### ***Defendants and GotHydroWater***

Defendants operate an online business through channels including the website https://gothydrowater.com/, the Instagram account @got.hydro.water.bottle, the Facebook page Got Hydro Water Bottle, and the TikTok account @got.hydro.water.  [DE 1] ¶ 25.  Plaintiff obtained records from Shopify Payments (USA) Inc., the payment processor for the Gothydrowater.com and Gothydrowater.net domains, identifying as the merchant associated with sales obtained through websites located at these two domains an individual named Hien Nguyen and an entity named 3Team USA LLC.  [DE 24–1] at 19, 35.

Records from the Colorado Secretary of State reflect that 3Team USA LLC is a Colorado limited liability company, with a principal office and registered agent located at 1942 Broadway St. Ste. 314C, Boulder, Colorado 80302, and that the principal associated with 3Team USA LLC

is Hien Nguyen aka Van Hien Nguyen ("Nguyen").[5]  [DE 24–2].  As reflected in the record, Plaintiff served Defendants at their registered address as listed in the records of the Colorado Secretary of State, *see* [DE 10], and the filings in this case have been sent to Defendants at that same registered address.

Defendants purport to sell "THE WORLD #1 HYDROGEN WATER BOTTLE," the "GotHydroWater" hydrogen water bottle. [DE 1] ¶ 26.  As of October 2024, the "GotHydroWater" bottle retailed for $49.99.  [DE 15–1] ¶ 13.  In April 2024, Defendants began running advertisements across various social media platforms—including Facebook and Instagram—that featured Plaintiff's name, image, and likeness without his knowledge or consent.  [DE 1] ¶ 27.  On April 3, 2024, Defendants began running an advertisement (the "First Ad") featuring a video clip from episode 1 of the Podcast featuring Dana White as a guest.  *Id.* ¶ 28.  The background of the First Ad shows the clip of Plaintiff introducing White while he drinks from a hydrogen water bottle, while the foreground includes a man pointing to a bottle of hydrogen water with a link to Defendants' website.  *Id.*

On April 3, 2024, Defendants began running an advertisement (the "Second Ad") using a video clip of an episode of The Joe Rogan Experience podcast featuring Plaintiff.  *Id.* ¶ 29.  The

---

[5] A court on its own or by motion may judicially notice "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Thus, a court may properly take judicial notice of records publicly available on the secretary of state's website.  *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1082 (S.D. Fla. 2019) (taking judicial notice of Sunbiz filing publicly available at Florida Department of State's website); *Birmingham Plumbers v. Iron Mountain Constr., Inc.*, No. 2:15-cv-00499-MHH, 2016 WL 4137972, at *3 n.2 (N.D. Ala. Aug. 4, 2016) (taking judicial notice of information on Alabama Secretary of State's website); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) (taking judicial notice of business entity profiles on the California Secretary of State's website); *Hill v. Mark A. Nestor, P.C.*, No. 1:15-cv-1177-LMM-ECS, 2015 WL 13777184, at *2 n.2 (N.D. Ga. June 18, 2015) (taking judicial notice of documents available on the Georgia Secretary of State's website).

Second Ad superimposes a link to Defendants' website to "shop now" over the clips.  *Id.*  On April 3, 2024, Defendants began running an advertisement (the "Third Ad") using a clip from Podcast episode 11, which included an advertisement for the Echo Go+™ with Echo's website and affiliate discount code.  *Id.* ¶ 30.  The Third Ad used the clip and cropped the bottom of the video, replacing Echo's website and Plaintiff's affiliate discount code with a link to Defendants' website to "shop now."  *Id.*; [DE 1–3].

Upon learning of Defendants' unlawful conduct, Plaintiff's counsel sent to Defendants a letter on April 22, 2024, requesting that Defendants cease and desist from all use of Plaintiff's name, image, and likeness and other Plaintiff and Ultimate Human content or intellectual property in any and all forms (the "Letter").  [DE 1] ¶ 32.  On May 7, 2024, Plaintiff's counsel sent a follow-up email to Defendants concerning the Letter.  *Id.*  Defendants never responded but appeared to comply by removing or rendering "inactive" the offending advertisements.  *Id.*

However, in August 2024, Plaintiff discovered that Defendants' compliance was temporary.  *Id.* ¶ 33.  Defendants continued to repost and re-run the advertisements featuring Plaintiff's name, image, and likeness.  *Id.* ¶¶ 34–35, 37–38.  In addition, Defendants ran an additional 41 new ads after the commencement of this case, and even after the Court entered the TRO and granted Plaintiff's request for a preliminary injunction.  *See* [DE 16–2]; [DE 25] at 7.  As a result of the Defendants' advertisements and promotion of the "GotHydroWater" hydrogen water bottle using Plaintiff's name, image, and likeness, relevant consumers are mistakenly led to believe that Plaintiff is affiliated with Defendants and otherwise endorses Defendants' products, when in fact he does not.  [DE 1] ¶ 31.

### *Consumer Confusion and Impact*

Defendants' false representations and unauthorized use of Plaintiff's name, image, and likeness caused actual consumer confusion.  [DE 23] at 34.  Plaintiff has received hundreds of complaints from consumers through his social media channels about the "GotHydroWater" bottle, complaining about leakage, lack of bubbles being generated, orders not being filled properly, and difficult return policies.  *Id.*  Defendants' actions created the perception that Plaintiff was endorsing two different bottles of very different quality and vastly different value, which affected his credibility and reputation.  *Id*. at 34–35.

As a result, there was a noticeable decline in Echo Bottle sales during the time Defendants marketed the "GotHydroWater" bottle using Plaintiff's name, image, and likeness from roughly between $3,980,000 and $4,500,000 in monthly sales to under $2,000,000 in monthly sales.  *Id.* at 36–37.  While Echo Bottle's sales declined, the sales of the "GotHydroWater" bottle increased as a result of Defendants' use of Plaintiff's name, image and likeness.  *Id*. at 38–39.  From the time that Plaintiff's counsel sent the Letter, Shopify's records show that Defendants received a total of $8,330,754.64 in payouts from sales from Gothydrowater.net and Gothydrowater.com, and that Defendants' sales increased significantly after Defendants began to run the ads.  *See generally* [DE 24–1].  Specifically, Defendants' sales from November 20, 2023, until Defendants began to run the ads on April 3, 2024, totaled $2,247,141.40 (an average of approximately $561,785.35 per month).  *Id*. at 21–28; 37–42.  After April 3, 2024, Defendants' sales totaled $8,333,436.00 (nearly doubling their monthly average to $925,937.33 per month).  *Id*.

## II.    CONCLUSIONS OF LAW

By the entry of default judgment on the issue of liability, the Court has already found Defendants to be liable for unfair competition and false endorsement under the Lanham Act, which

are equivalent to trademark infringement. *See Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1278, 1278 n.37 (11th Cir. 2012); *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1160 (11th Cir. 2022).[6]   Furthermore, the Court has found Defendants to be liable for the unauthorized use of Plaintiff's name, image, likeness under section 540.08, Florida Statutes, and common law invasion of privacy. *See* § 540.08(7), Fla. Stat. (2024) (Florida's invasion of privacy statute does not limit "the remedies and rights of any person under the common law against the invasion of her or his privacy."); *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1220 (M.D. Fla. 2002) ("Under Florida law, the elements of common law invasion of privacy—commercial misappropriation of likeness coincide with the elements of unauthorized publication of name or likeness in violation of Fla. Stat. § 540.08.").

Moreover, it is well established that the sole owner and/or director of a corporate defendant who directed, controlled, ratified, participated in, or was otherwise the moving force behind the infringing activity can be held jointly and personally liable alongside the corporate defendant. *See, e.g., Babbit Elecs. Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1183–84 (11th Cir.1994) (finding the individual defendants jointly and personally liable with their corporation for all relief, which included corporate profits, because they "authorized, directed, and participated in the infringement"); *Turner Greenberg Assocs., Inc. v. C & C Imports, Inc*., 320 F. Supp. 2d 1317, 1334 (S.D. Fla. 2004) ("A corporate officer is personally liable if he or she personally took part in infringing activities or specifically directed employees to do so."); *Vivid Entm't, LLC v. Baserva*, No. 2:13-CV-524-FTM-29, 2015 WL 5021417, at *5 (M.D. Fla. Aug. 25, 2015)("Joint and several

---

[6] Additionally, under Florida law, the legal standards for common law claims of unfair competition are the same as those under the Lanham Act. *Anderson v. Upper Keys Bus. Grp., Inc.*, 61 So. 3d 1162, 1167 (Fla. 3d DCA 2011).  Accordingly, given that Defendants are liable under § 1125(a), Plaintiff has established Defendants' liability for common law unfair competition. *See Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F. Supp. 2d 1369, 1376 (M.D. Fla. 2008).

liability extends to a defendant where, as here, the corporate defendant was closely held by the individual defendant who was engaging in the infringing conduct.").

Additionally, there is sufficient record evidence, in merchant records from Shopify and corporate records, demonstrating that Nguyen and 3Team USA, LLC are, in fact, the "Individuals, Entities, And Unincorporated Associations D/B/A Got Hydro Water Bottle" as identified in the original case caption and plead in the Complaint.  *See* [DE 24–1]; [DE 24–2].  Accordingly, judgment may be entered against both Defendants, Nguyen and 3Team USA, LLC, by name.

Here, Defendants by their default have admitted the allegations in the Verified Complaint, which include that the Individual Defendants are jointly and personally liable for the Corporate Defendants' acts.  *See* [DE 1] ¶¶ 7–8 ("[T]he Individual Defendants directed, controlled, ratified, participated in, or w[as] otherwise the moving force behind the alleged unlawful activity and, therefore, [is] personally liable for the Corporate Defendants' acts of unfair competition, violation of Plaintiff's right of publicity, and invasion of privacy without regard to alter ego liability or piercing the corporate veil.").  Plaintiff has produced sufficient evidence based on the Colorado Secretary of State filing and Shopify records to identify the relevant individual defendant as Nguyen and the relevant corporate defendant as 3Team USA LLC.  *See* [DE 24–1]; [DE 24–2].

### A.  Damages for Plaintiff's Claims

Pursuant to 15 U.S.C. § 1117(a), a violation of section 1125(a) entitles a plaintiff to recover a defendant's profits, any damages sustained by the plaintiff, and the costs of the action.  15 U.S.C. § 1117(a).  "[T]he Lanham Act confers upon district courts 'wide discretion in determining a just amount of recovery for trademark infringement.'"  *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1241 (11th Cir. 2008) (quoting *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1564–65 (11th Cir. 1986)).  Indeed, "Lanham Act damages may be awarded even when they are

not susceptible to precise calculations." *Ramada Inns*, 804 F.2d at 1565. "Where the wrong is of such a nature as to preclude exact ascertainment of the amount of damages, plaintiff may recover upon a showing of the extent of damages as a matter of just and reasonable inferences, although the result may be only an approximation." *Id.* (quoting *Bangor Punta Operations, Inc. v. Universal Marine Co.*, 543 F.2d 1107, 1110–11 (5th Cir. 1976)).

In addition, where a violation involves false endorsement, including in conjunction with a violation of the right of publicity, courts may look to the "fair market value" of plaintiff's services to ascertain damages. *See Souza v. Nowhere Bottle & Soc. Club, Inc.*, No. 19-24692-CIV, 2020 WL 13420543, at *6–7 (S.D. Fla. Feb. 27, 2020); *Canas v. Babe's S., Inc.*, No. 3:21CV942-MCR-HTC, 2023 WL 2885197, at *4 (N.D. Fla. Feb. 22, 2023), *report and recommendation adopted,* 2023 WL 4352078 (N.D. Fla. July 5, 2023). And "the law in this Circuit is well settled that a plaintiff need not demonstrate actual damage to obtain an award reflecting an infringer's profits." *Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988).

### i. Defendants' Profits

Here, Plaintiff requests that the Court award damages for Defendants' violations measured by Defendants' profits from the date of the Letter (April 22, 2024), or in the alternative, from the date of the Court's entry of the TRO (September 23, 2024). *See* [DE 23] 48–49. Under either alternative, Plaintiff also requests that the Court double the award based upon Defendants' continued and willful infringement despite numerous notices, and violation of the TRO.

To substantiate Plaintiff's request for damages, Plaintiff presented evidence in the form of his testimony and records from Shopify, the payments processor for Defendants' storefronts, to show the amount of Defendants' sales. *See* 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or

deduction claimed.").  The evidence presented establishes that from the date of Plaintiff's Letter, Defendants received a total payout in the amount of $8,330,754.64 from Shopify; and that from the date of entry of the TRO, Defendants received a total payout in the amount of $5,641,788.20 from Shopify.  *See* [DE 24–1] at 50.  Under section 1117(a), Plaintiff is not required to show any amount of potential deduction to which Defendants may be entitled, and Defendants have foregone the opportunity to do so by failing to appear or participate in this case.  *See* 15 U.S.C. § 1117(a); *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1353–54 (11th Cir. 2019). Nevertheless, as reflected in the records provided to the Court, the Shopify payout amounts Defendants received in fact account for refunds, adjustments, and other deductions, such as Shopify's fees.  *See generally* [DE 24–1].  Thus, the amount reflected as a Shopify payout amount is already discounted.

Upon review of the submitted evidence, the Court determines that Plaintiff is entitled to damages measured by Shopify's total payout to Defendants from the date of the Letter.  That is, when Plaintiff first notified Defendants of their violative conduct and demanded that Defendants cease and desist.  Therefore, the base amount of the award should be $8,330,754.64.

### ii.   Requested Doubling

Plaintiff requests that the Court double the base amount of damages to account for Defendants' repeated and continued infringement, even after the Court entered injunctive relief. *See generally* [DE 16]; [DE 23] at 48–49.  The court can award damages, "according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."  15 U.S.C. § 1117(a).[7]  The Court concludes that the circumstances of

---

[7] Additionally, under section 540.08, Florida Statutes, Plaintiff may recover punitive damages if Defendants knew they lacked permission to use Plaintiff's image and did so anyway.  *See* § 540.08(2), Fla. Stat. (2024); *Coton v. Televised Visual X-Ography, Inc.*, 740 F. Supp. 2d 1299,

the case warrant doubling the amount of actual damages.  Plaintiff presented evidence showing that, due to Defendants' actions, Plaintiff's brand has been, and continues to be, tarnished.  Not only have sales of Plaintiff's endorsed product (for which he receives a significant percentage of the revenue) experienced a steep decline due to a much lower-cost product seemingly endorsed by Plaintiff being on the market, but Defendants' actions have impacted Plaintiff's ability to endorse future products.  The damage to Plaintiff's reputation is supported by the testimony that he received hundreds of complaints from consumers through his social media channels, both criticizing the quality of the GoHydro bottle itself and accusing Plaintiff of being a "fraud" for endorsing the product.  [DE 23] at 33–35.

While damage to Plaintiff's ability to endorse future products cannot be precisely quantified, the language in section 1117(a) envisions this exact circumstance.  The Court may award, depending on the circumstances of the case, up to three times the amount of actual damages.  Here, an award doubling the amount of actual damages is appropriate as it compensates Plaintiff for Defendants' actions that damaged Plaintiff's ability to endorse future products and for the damages pertaining to the drop in sales for the Echo Bottle.

Furthermore, despite notice from Plaintiff and entry of the TRO, Defendants did not take down the ads using Plaintiff's name, image, and likeness.  Instead, as reflected in Plaintiff's Motion for Contempt and the evidence presented during the evidentiary hearing, Defendants doubled down.  Defendants ran an additional 41 new ads featuring Plaintiff's name, image, and likeness to continue sales of their "GotHydroWater" bottle.  *See* [DE 16–2].  Defendants continued to willfully

---

1312 (M.D. Fla. 2010).  Here, it is undisputed that upon receiving the Letter, Defendants knew they lacked Plaintiff's permission to use his name, image, and likeness.  And, despite this knowledge, Defendants increased their improper use of Plaintiff's name, image, and likeness even after previous Court orders directing them to cease their use.

violate Plaintiff's rights and the Court's orders.  Accordingly, Plaintiff's base damages award should be doubled to over $16,000,000.  However, at the hearing, Plaintiff's counsel requested that the Court award an even $16,000,000.00.  [DE 23] at 49; [DE 26] at 13.  I agree with that amount.[8]

### B.  Plaintiff is Entitled to Recover His Reasonable Attorneys' Fees and Costs

The Lanham Act gives the Court discretion to award reasonable attorneys' fees in "exceptional cases."  15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.").  According to the Eleventh Circuit, an exceptional case need not be characterized as "malicious, fraudulent, deliberate, or willful"; it requires finding "only that a case 'stands out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated." *Tobinick v. Novella*, 884 F.3d 1110, 1117–18 (11th Cir. 2018).

"Exceptional" cases include those situations "when the defendant disregards legal proceedings and does not appear." *TracFone Wireless, Inc. v. Cabrera*, 883 F. Supp. 2d 1220, 1227 (S.D. Fla. 2012); *see also Punch Clock, Inc. v. Smart Software Dev.*, 553 F. Supp. 2d 1353, 1356–59 (S.D. Fla. 2008) (awarding attorneys' fees when defendant defaulted and plaintiff established that defendant's actions were willful); *Tiramisu Int'l LLC v. Clever Imports LLC*, 741 F. Supp. 2d 1279, 1295 (S.D. Fla. 2010) (awarding attorneys' fees when defendant ignored plaintiff's cease and desist letter and continued to distribute the infringing product after the initiation of the lawsuit and after it had stated in discovery responses that it had ceased such behavior); *CarMax Auto Superstores, Inc. v. StarMax Fin., Inc.*, 192 F. Supp. 3d 1279, 1284 (M.D.

---

[8] This award also includes damages for the additional violations set forth in Plaintiff's Motion for Contempt.

Fla. 2016) (awarding attorneys' fees when defendant ignored entire suit and pre-suit notifications); *Colonial Van Lines, Inc. v. Colonial Moving & Storage, LLC*, No. 20-CIV-61255-RAR, 2020 WL 6700449, at *7 (S.D. Fla. Oct. 20, 2020) (awarding fees under the Lanham Act when the strength of the case was so much in favor of plaintiff and case was in default).

Here, the facts support the conclusion that this is an exceptional case warranting an award of attorneys' fees. Defendants continued to improperly use Plaintiff's name, image, and likeness even after Plaintiff sent his Letter to them. Defendants failed to appear throughout this entire litigation despite receiving notice. Defendants failed to comply with the TRO and in fact increased their improper use of Plaintiff's name, image, and likeness. And, Plaintiff's case against Defendants, regardless of their lack of appearance, was exceptionally strong. This blatant disregard for the jurisdiction and authority of this Court warrants a finding that this is an exceptional case justifying an award of attorneys' fees to "serve the important functions of deterring future infringements, penalizing Defendants for their unlawful conduct, and compensating Plaintiff for [his] fees and costs." *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1222 (S.D. Fla. 2004).

### i. Reasonableness

In conjunction with Plaintiff's Motion for Final Default Judgment, Plaintiff's counsel provided a Declaration as to Attorneys' Fees, [DE 15–2], setting forth a total amount of $17,081.50 in fees through October 10, 2024.[9]

When determining the reasonableness of attorneys' fees, courts begin by multiplying a reasonable hourly rate by the number of hours reasonably expended. *Norman v. Hous. Auth. Of*

---

[9] Plaintiff is not seeking an award for additional attorneys' fees accrued since filing the Motion for Final Default Judgment, even though Plaintiff subsequently filed the Motion for Contempt and appeared at the evidentiary hearing on damages.

*Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424,

433 (1983)).  The result of that calculation is known as the lodestar, s*ee id.* at 1301–02, which is

"strongly presumed to be reasonable," *Martinez v. Hernando Cnty. Sheriff's Office*, 579 F. App'x

710, 715 (11th Cir. 2014) (quoting *Resol. Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144,

1150 (11th Cir. 1993)).

 While there is a strong presumption that the lodestar is the reasonable sum the attorneys

deserve, the Eleventh Circuit has instructed the lower courts to consider the twelve factors

enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) in

determining the reasonable amount of fees.  *Caplan v. All Am. Auto Collision, Inc.*, 36 F.4th 1083,

1089 (11th Cir. 2022).  Courts must consider:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3)
> the skill requisite to perform the legal service properly; (4) the preclusion of
> employment by the attorney due to acceptance of the case; (5) the customary fee;
> (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client
> or the circumstances; (8) the amount involved and the results obtained; (9) the
> experience, reputation, and ability of the attorneys; (10) the "undesirability" of the
> case; (11) the nature and length of the professional relationship with the client; and
> (12) awards in similar cases.

*Ass'n of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 n.1 (11th Cir. 2006).

 The party seeking an award of fees has the burden of documenting the hours incurred and

the applicable hourly rates.  *Norman*, 836 F.2d at 1303.  Fee applicants are required to exercise

billing judgment and to exclude entries that are excessive, redundant, or otherwise unnecessary.

*Am. C.L. Union of Ga. V. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (citing *Hensley*, 461 U.S. at

434).  Entries for clerical or administrative tasks should also be excluded.  *See Ortega v. Berryhill*,

No. 16-24697-CIV, 2017 WL 6026701, at *2 (S.D. Fla. Dec. 5, 2017) ("Purely clerical or

secretarial tasks that require no legal skill or training, such as converting pleadings to PDF, faxing

and mailing, updating lists and calendars, and filing or e-filing documents, should not be billed at

a paralegal rate regardless of who performs them." (citing *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999))).

It is axiomatic that hours that are unreasonable to bill to one's client are unreasonable to bill to an adversary, "*irrespective of the skill, reputation or experience of counsel*." *Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301). If fee applicants fail to exercise billing judgment, courts must do it for them. *Id.* A court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

Courts reviewing fee applications "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Consequently, "[w]hen a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008).

Plaintiff proposes the following rates for his attorneys and non-attorneys:

| Name | Position | Years of Experience | Requested Amount |
|------|----------|---------------------|------------------|
| Geoffrey Lottenberg | Partner | 17 | $660.00 |
| William Perry Hicks | Associate | 7 | $510.00 |
| Ana Kauffman | Associate | 14 | $635.00 |
| Luis Torres | Paralegal | 20 | $325.00 |

Because Plaintiff is the party seeking an award of fees, Plaintiff has the burden of "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." *Barnes*, 168 F.3d at 427 (quoting *Norman*, 836 F.2d at 1303). "A reasonable hourly rate is

'the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'" *Id.* at 436 (quoting *Norman*, 836 F.2d at 1299). "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" *Id.* at 437 (citing *Cullens v. Ga. Dep't. of Transp.,* 29 F.3d 1489, 1494 (11th Cir.1994)).

After reviewing Plaintiff's attorneys' and non-attorneys' qualifications, experience, and the recent market conditions in the South Florida legal market, I find Plaintiff's attorneys' rates reasonable. However, Luis Torres' rate is unreasonable for a paralegal. *See Dental Fix Rx, LLC v. Moore*, No. 17-62218-CIV, 2022 WL 358349, at *3 (S.D. Fla. Jan. 21, 2022), *report and recommendation adopted,* 2022 WL 356463 (S.D. Fla. Feb. 7, 2022) (awarding $95.00 per hour for paralegals); *Burgos v. SunTrust Bank, N.A.*, No. 13-21197-CIV, 2020 WL 2299937, at *9 (S.D. Fla. Mar. 31, 2020), *report and recommendation adopted,* 2020 WL 2299936 (S.D. Fla. May 7, 2020) (finding $100.00 rate for paralegal reasonable); *Cap. One N.A. v. Mia. Motor Sports, LLC*, No. 18-61942-CIV, 2019 WL 2106106, at 3 (S.D. Fla. Apr. 4, 2019), *report and recommendation adopted,* 2019 WL 2105878 (S.D. Fla. Apr. 24, 2019) (reducing legal research librarian rate down to $100.00 from $195.00); *Sevares v. Am. Pipeline Constr., LLC*, No. 1:22-CV-21233-KMM, 2023 WL 4930405, at *1 (S.D. Fla. Aug. 2, 2023) (agreeing that paralegal rate should be reduced from $150.00 to $125.00). Consequently, Luis Torres' rate should be reduced to $175.00.[10]

As to the hours reasonably expended, I find Plaintiff's attorneys' and non-attorneys' hours reasonably expended minus one hour for Luis Torres. While reviewing the submitted time records, I found small examples of Luis Torres billing for clerical work such as filing documents and

---

[10] Though $175.00 is slightly higher than the amount awarded in the cases above, I find that Luis Torres' extensive experience and the recent market conditions in South Florida warrant this increased rate for this particular case.

communicating with a process server.  *See* [DE 15–2] at 7–8.  Entries for clerical or administrative tasks should be excluded from fee motions.  *See Ortega*, 2017 WL 6026701, at *2.

When applying the Court's deductions, the total award for each individual's billed time is as follows:

| Name | Adjusted Hours | Adjusted Hourly Rate | Total Amount |
|---|---|---|---|
| Geoffrey Lottenberg | 12.2 | $660.00 | 12.2*$660.00= $8,052.00 |
| William Perry Hicks | 3.5 | $510.00 | 3.5*$510.00=$1,785.00 |
| Ana Kauffman | 6.7 | $635.00 | 6.7*$635.00=$4,254.50 |
| Luis Torres | 8.2 | $175.00 | 8.2*$175.00=$1,435.00 |
| **Total** | | | **$15,526.50** |

Therefore, the total amount of attorneys' fees Plaintiff should recover after calculating the lodestar $15,526.50.

In arriving at this number, the Court considered:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*See Neptune Designs, Inc.*, 469 F.3d at 1359 n.1.

This case was resolved fairly quickly, and Defendants defaulted.  Plaintiff's lead attorney is a registered patent attorney and a Florida Bar Board Certified Intellectual Property Attorney. Plaintiff's attorneys achieved a wholly favorable decision in his favor.  And, the Court entered a TRO and found Defendants liable for Plaintiff's damages.  Thus, an award of $15,526.50 is appropriate in this scenario.

### C.  Plaintiff is Entitled to a Permanent Injunction

A plaintiff who seeks a permanent injunction must show: (1) an irreparable injury; (2) that remedies at law are inadequate to compensate for that injury; (3) that a remedy in equity is warranted in light of balancing the hardships between the plaintiff and defendant; and (4) that the public interest would not be disserved by a permanent injunction.  *See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006).

Here, Plaintiff readily satisfies the requirements to permanently enjoin Defendants' misconduct.  First, the substantial likelihood of confusion and actual confusion resultant from Defendants' false endorsement constitutes an irreparable harm.  *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (concluding that a "substantial likelihood of confusion" was sufficient to show irreparable injury).

Second, monetary damages alone will not cure the injury to Plaintiff's reputation and goodwill that has and will result if the door is left open for Defendants to continue the unauthorized and impermissible use Plaintiff's name, image, and likeness.  *See Burger King v. Huynh*, No. 11-22602-CIV, 2011 WL 6190163, at *7 (S.D. Fla. 2011).  By contrast, Defendants suffer no hardship if they are prohibited from committing an illegal act.  *See id.*  As to the public interest, "the public deserves not to be led astray" by any false association or endorsement of a product.  *See Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008).  To that end, in actions such as this, "complete injunctions against the infringing party are the order of the day."  *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1336 (11th Cir. 1996).  As a result of Defendants' acts of unfair competition and false endorsement, and violations of Plaintiff's right of publicity, Plaintiff is entitled to a permanent injunction as set forth below.

## **CONCLUSION**

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion for Contempt [DE 16] should be **DENIED AS MOOT**, and an amended final judgment should be entered in favor of Plaintiff and against Defendants as follows:

1.      Defendants, Hien Nguyen a/k/a Van Hien Nguyen, and 3Team USA, LLC, shall pay, jointly and severally, to Plaintiff **$16,000,000.00** in damages under 15 U.S.C. § 1117(a), representing double the amount of profits Defendants received for sales of the "GotHydroWater" bottle using Plaintiff' name, image, and likeness without authorization.

2.      Having found that this was an exceptional case within the meaning 15 U.S.C. § 1117(a), Defendants shall pay to Plaintiff **$15,526.50** in attorneys' fees.

3.      Defendants, Hien Nguyen a/k/a Van Hien Nguyen, 3Team USA, LLC, any and all agents or representatives of Defendants, and any and all others acting in concert or participation with Defendants, are hereby immediately, forever, and permanently enjoined from (a) advertising, promoting, offering for sale, or providing in any manner any goods or services in connection with or bearing the name, image, or likeness of Plaintiff; (b) representing or suggesting in any fashion to any third party that Defendants' goods or services are affiliated with, sponsored by, or otherwise connected with Plaintiff; (c) doing any other acts calculated or likely to cause confusion or mistake in the mind of the public or to lead consumers into the belief that Defendants' products are authorized, sponsored, licensed, endorsed, promoted, or condoned by Plaintiff, or are otherwise affiliated with or connected to Plaintiff; and (d) otherwise competing unfairly with Plaintiff or violating Plaintiff's right of publicity.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable

Raag Singhal, United States District Judge.  Failure to timely file objections shall bar the parties

from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar

the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this

Report except for plain error if necessary in the interests of justice.  *See* 28 U.S.C. § 636(b)(1);

*Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989);

11th Cir. R. 3-1.

     **DONE AND SUBMITTED** in Fort Lauderdale, Florida this 1st day of April 2025.

                    **Jared M. Strauss**
                    **United States Magistrate Judge**